UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
: 
Louisa Mojela, :
:
                           Plaintiff, :   Index No.
:
   -against- :
: **COMPLAINT**
Interactive Brokers LLC, :
:
                        Defendant. :
: **JURY TRIAL DEMANDED**
:
:
:
------------------------------------- X

Plaintiff Louisa Mojela ("Plaintiff"), by and through her attorneys, Gelber & Santillo PLLC, for her complaint against Interactive Brokers LLC ("Defendant"), alleges upon information and belief as follows:

**NATURE OF THIS ACTION**

1. Plaintiff is an entrepreneur, from South Africa. After years of hard work, she created a company, Bophelo Bio Science and Wellness (Pty) Ltd ("Bophelo"), a company incorporated in the Kingdon of Lesotho, which was later acquired and spun off into the Akanda Corporation ("Akanda") in which she was granted shares as a Founder of Akanda and as its Executive Chairman. Plaintiff also invested her own money, an additional $2,250,000, in Akanda. The company was successfully listed on the NASDAQ exchange on March 15, 2022.

2. Plaintiff held 2,855,602 shares in Akanda, which traded on the NASDAQ exchange in New York.

1

3. Plaintiff's shares were entrusted to the custody of the appointed transfer agent, Endeavour Trust Corporation ("Endeavor"), which took over as transfer agent for Continental Stock Transfer and Trust ("Continental"), the initial transfer agent.

4. Defendant, an online broker-dealer, recklessly permitted fraudsters to open an account at Interactive in Plaintiff's name, without doing the most basic diligence.

5. Defendant then reached out to Endeavor and instructed it to transmit Plaintiff's shares to Defendant, unlawfully asserting dominion over her property. Plaintiff's hard-earned shares were stolen, and the fruits of her years of hard work dissipated.

6. Upon receiving notice from Plaintiff of the fraud and confirmation that she was the true owner of the shares, Defendant stonewalled her, refusing to return the shares, compensate her, take any steps to remedy her losses, or provide her with timely information to understand what had happened so that she could take the appropriate action in order to protect her rights.

## PARTIES, JURISDICTION, AND VENUE

7. This Court has subject matter jurisdiction with respect to this case pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

8. Plaintiff, who resides at 2 & 3 West Road, South Estate 115 Farringdon Str. & Berrill Lane Morningside, 2057 South Africa, is a citizen of the Republic of South Africa for purposes of diversity jurisdiction under 28 U.S.C. §1332.

9. Defendant is a limited liability company organized under the laws of the state of Connecticut, with its headquarters at One Pickwick Plaza, Greenwich, CT 06830. It has offices at 1133 6th Avenue, New York, NY 10036.

10. The acts complained of occurred in the Southern District of New York, where Defendant has offices and regularly conducts business; where Defendant tortiously asserted dominion over these shares; and where these shares transferred and sold. Venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), and this Court has personal jurisdiction over Defendant pursuant to CPLR 301 and 302.

## FACTUAL ALLEGATIONS

11. This lawsuit seeks damages arising from Defendants' unlawful conversion of Plaintiff's shares in the Akanda Corporation, without her knowledge or consent.

12. Plaintiff is an entrepreneur, from South Africa. In 2018 she formed Bophelo, a private company incorporated in the Kingdom of Lesotho. Its primary business is the cultivation and manufacturing of medical cannabis.

13. Bophelo partnered with a Canadian company, Halo Collective Incorporated ("Halo"), to grow its business.

14. In 2021, Bophelo and Halo ultimately spun off their cannabis business into another company, Akanda, in which Plaintiff was issued 2,855,602 shares.

15. Plaintiff's 2,855,602 shares in Akanda were entrusted to the custody of the appointed transfer agent, Endeavour, which took over as transfer agent for Continental, the initial transfer agent, in or about June 2022.

16. On or about July 13, 2022, someone pretending to be Plaintiff opened an account with Defendant in Plaintiff's name.

17. Defendant recklessly ignored several red flags in opening the account, despite its legal obligation to know its customers.

18. Relying exclusively on fake identification from South Africa, a country heavily associated with identity theft, without a single in person meeting, Zoom, or even the most basic effort to confirm that the person opening the account was the person(s) providing the documents, Defendant opened an account in the name of Plaintiff.

19. Defendant accepted an electronic request to open an account by someone who presented uncertified, and highly questionable, South African identification documents. The copy of the identification card provided is several years old and the picture is very faded and unclear. The document purporting to be Plaintiff's passport has the wrong color marker. While South African passports typically have rust colored marks; this passport had a red colored mark, which a rudimentary internet search would have indicated is an indicator that it is fake.

20. Furthermore, it was also well known at the time the account was opened that there were problems with fraudulent passports in South Africa. See, e.g., https://businesstech.co.za/news/government/629933/homeaffairs-nails-500-fake-south-african-passports/.

21. Oddly, the newly opened account then sat dormant, with effectively no activity from July 2022 until February 2023. This was another red flag.

22. In February 2023, Defendant provided instructions to Endeavor to have Plaintiff's Akanda shares transferred to its custody.

23. In providing these instructions, Defendant both interfered with Plaintiff's dominion over her shares of Akanda and wrongfully asserted its own dominion.

24. These actions were unlawful *ab initio*.

25. Defendant ultimately sold the shares and transferred the proceeds from Plaintiff's shares to multiple banks, one in ABSA Zambia purportedly in the name of the Plaintiff and one in

4

Indonesia, again purportedly in the name of the Plaintiff. The two to three separate accounts in multiple jurisdictions should have been a red flag to anyone, particularly an institution such as Defendant, which was obligated by law to monitor and detect fraud, and which has previously been sanctioned for failing to do so.

26. Notably, in 2020, Defendant was fined $38,000,000 by the SEC, FINRA and the CFTC for failing to recognize red flags in their customer accounts, and failing to file suspicious activity reports in connection therewith.

27. This fraud could have been detected with the most basic of inquiries, which would have avoided Plaintiff's losses. Indeed, a recent inquiry to ABSA Zambia, which Defendant could have easily undertaken but failed to do, confirmed that documents provided to Defendant purportedly to establish the validity of an account in Zambia were fraudulent.

28. Upon learning of the fraud, Defendant did nothing to mitigate Plaintiff's losses or help her recover her shares.

29. On or about June 17, 2023, Plaintiff contacted Endeavor to request a copy of her latest account statement.

30. In its response, Endeavor advised Plaintiff that on or about February 10, 2023, Endeavor had transferred all of her Akanda shares to Defendant, at Defendant's request and that, for reasons unknown to Plaintiff, 755,302 of the 2,855,602 shares were then returned, leaving 2,100,300 wrongfully converted and not returned.

31. Plaintiff was shocked when she learned of the unauthorized transfer of her shares to Defendant, Interactive, a company she had never even heard of and at which she had never opened an account.

32. Not only did Defendant take unauthorized possession of Plaintiff's shares on or about February 10, 2023, but Defendant resisted extensive efforts by Plaintiff for nearly two years to obtain the return of her shares, payment for the value of her misappropriated shares, or even sufficient information to enable her to investigate the theft of her shares.

33. On July 12, 2023, soon after learning that Defendant converted the shares, Plaintiff's South African counsel wrote to Defendant to demand that her "client's shares are returned to her."

34. After receiving no response, Plaintiff's counsel again wrote to Defendant on July 18, 2023, with no response.

35. On August 28, 2023, Plaintiff wrote Defendant, now for the third time. Though Defendant did finally respond, it neither agreed to return the shares, to compensate Plaintiff for the conversion, nor agreed to share basic information, other than to indicate that someone using Plaintiff's name had opened an Interactive Account.

36. While Defendant ultimately agreed to share certain limited information over a year later, in response to further queries from Plaintiff, no shares have been returned to Plaintiff, and no value for the converted shares was ever paid to her.

37. What's more, once the account was opened, the pattern of activity in the account should have raised additional red flags. From the time of its opening on July 13, 2022 through January 2023, the account had, at most, $100 in it, until the request was made to transfer Plaintiff's shares, which had a value of more than $500,000, to Defendant.

38. Thereafter, requests were made to transfer the funds to multiple different countries, including South Africa, Indonesia, and apparently Zambia. This pattern of activity should have prompted further inquiry within Defendant's compliance department, as to whether the requests to

obtain Plaintiff's shares and transfer funds from sales of the shares to different countries were fraudulent.

## AS AND FOR THE FIRST CAUSE OF ACTION
### (Conversion)

39. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as if fully stated herein.

40. Plaintiff was at all times the legal owner of the Akanda shares in her name, as reflected by the records of Continental and Endeavor.

41. Without doing the most basic diligence, Defendant opened an account in the name of a someone pretending to be Plaintiff.

42. Defendant provided instructions to Endeavor, directing it to transfer Plaintiff's shares to its dominion and control. This both interfered with Plaintiff's lawful dominion over the shares and took dominion and control itself.

43. Defendant's possession was unlawful ab initio, having never possessed rightful control over the shares.

44. While under such circumstances, no demand is legally required, Plaintiff made demand for the return of her shares, or compensation, on multiple occasions.

45. Defendant never agreed to return the shares or to compensate Plaintiff.

46. Defendant is liable for conversion.

47. Plaintiff is entitled to damages in an amount equal to the value of the shares at the time of the conversion, to be proven at trial.

## AS AND FOR THE SECOND CAUSE OF ACTION
### (Negligence)

48. Plaintiff hereby incorporates the foregoing paragraphs of this Complaint as if fully stated herein.

49. Plaintiff has a duty not to open accounts or transfer stock into and out of such accounts without conducting diligence in a commercially reasonable manner.

50. By opening an account in Plaintiff's name without taking any steps to verify that the person(s) opening the account were actually the person they purported to be, Defendant breached this duty.

51. Defendant further breached this duty by transferring (the shares or proceeds from sales of the shares) to multiple foreign accounts, when the existence of different accounts in multiple jurisdictions in such a short time span should have itself alerted Defendant to the fraud.

52. It was reasonably foreseeable that Defendant's breach would harm Plaintiff.

53. Plaintiff has been damaged as a result of this breach, in an amount to be proven at trial.

## PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment awarding the following:

a. Damages to be proven at trial, but in an amount believed to be no less than $562,880.40.

b. Damages as are otherwise allowable at law or in equity, including as appropriate punitive damages; and

c. Such other relief as this Court may deem just and appropriate.

Dated: New York, New York
July, 10 2025,

                              GELBER & SANTILLO PLLC

                              By: /s/R. Zachary Gelber
                                  R. Zachary Gelber
                                  Kristen M. Santillo
                                  52 Duane Street, 7th Floor
                                  New York, NY 10018
                                  Phone: 212-227-4743
                                  *Attorneys for Plaintiff*